**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IRVIN F. WALKER,**

        **Petitioner,**

    **v.**                      **Case No. 2:04-CV-519**
                                        **JUDGE SARGUS**
**JEFFREY WOLFE,**                    **Magistrate Judge KING**

        **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.    For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### I.  FACTS

This case involves the following facts, as summarized by the Ohio Fourth District Court of Appeals:

> On the evening of July 22, 2001, Lawrence County Sheriff's Deputy Aaron Bollinger was dispatched to the home of Christina Walker. Ms. Walker alleged that her husband, Defendant-Appellant Irvin F. Walker, from whom she was then separated, had shot a firearm at her residence.
>
> While Bollinger was speaking with Ms. Walker, a light-blue pickup truck slowly pulled in front of the house.  The truck was approximately fifteen feet from where Bollinger and Ms. Walker were standing.

Bollinger [shone] his flashlight into the face of the driver, and identified him as appellant.

Appellant then left at a high rate of speed.

Bollinger then entered his cruiser and commenced a pursuit of appellant.

At one point, Bollinger lost sight of appellant, but relocated him stopped at a stop sign.  Bollinger pulled in behind appellant and activated his siren and overhead lights.

However, appellant ignored Bollinger, accelerated his vehicle, and the pursuit continued.

The pursuit reached speeds in excess of eighty m.p.h. and continued through two residential neighborhoods.  At one point, they passed at least ten individuals who were standing in a yard near the roadway.

Ultimately, appellant escaped Bollinger by driving into a field. Bollinger apprehended appellant at a later date.

In October 2001, a jury trial commenced on the sole indicted charge of failure to comply with an order or signal of a police officer, a violation of R.C. 2921.331.  The charge was for a third degree felony because it was alleged that appellant's behavior posed "a substantial risk of serious physical harm to persons or property."   R.C. 2921.331(C)(5)(a)(ii).

Exhibit 13 to *Return of Writ*.

## II.  PROCEDURAL HISTORY

Petitioner was indicted by the 2001 term of the Lawrence County grand jury on one count of felonious assault, in violation of O.R.C. §2903.11(A)(2), with a firearm specification, and one count of failure to comply with an order or signal of a police officer, in violation of O.R.C. §2921.331(B).  Exhibit 1 to *Return of Writ*.  The felonious assault charge was later dismissed at the request of the prosecution.  Exhibits 5 and 6 to *Return of Writ*.  While represented by counsel, petitioner proceeded to jury trial on the charge that he failed to comply with an order or signal of

2

a police officer.  On October 18, 2001, petitioner was found guilty as charged.  He was sentenced

to four years incarceration.  Exhibit 2 to *Return of Writ*.  On October 31, 2001, petitioner filed a

motion for a new trial.  Petitioner asserted juror misconduct and insufficiency of the evidence to

sustain his conviction.  Exhibit 3 to *Return of Writ*.  On November 19, 2001, the trial court denied

petitioner's motion for a new trial.  Exhibit 4 to *Return of Writ*.  Petitioner never filed an appeal of

the trial court's decision denying his motion for a new trial to the state appellate court.  However,

still represented by the same attorney, petitioner filed a timely appeal of his conviction and sentence

to the Fourth District Court of Appeals.  He asserted the following assignments of error:

> 1.  The State of Ohio failed to establish each and every material
> element of the offense beyond a reasonable doubt, and the denial by
> the trial court of the defendant/appellant's motion for judgment of
> acquittal is reversible error.
>
> 2.  The trial court committed prejudicial, reversible error in
> permitting the State of Ohio, over objection of the defendant, to
> cross-examine the defendant on prejudicial, inflammatory matters, in
> the form of prior bad acts and/or misdemeanor convictions.
>
> 3.  The trial court abused its discretion in denying defendant's motion
> for new trial upon the grounds of juror misconduct.
>
> 4.  The trial court did not take into consideration all of the mandatory
> factors when it sentenced the defendant, and/or the
> defendant/appellant/s sentence is inappropriate, improper, harsh, and
> too severe under all of the circumstances.

Exhibit 7 to *Return of Writ*.  On November 21, 2002, petitioner filed a  *pro se* motion to supplement

his appellate brief to include the following additional claims:

> 1.  The trial court erred in allowing the state to impermissibly amend
> the original indictment that changed the identity of the offense
> charged by providing for a greater penalty and level of offense than
> that found in the original indictment.

3

> 2. The trial court erred by allowing the state to pursue a fundamentally unfair course of action in which the state vindictively penalized the appellant by augmenting the charges upon appellant's exercising his constitutional right to a jury trial.

Exhibits 9 and 10 to *Return of Writ*. On December 9, 2002, the appellate court affirmed the judgment of the trial court. Exhibit 13 to *Return of Writ*.[1] The appellate court denied petitioner's request to supplement his appeal with additional assignments of error as moot. Exhibit 14 to *Return of Writ*. Petitioner never filed a timely appeal of the appellate court's decision denying his direct appeal or his motion to supplement to the Ohio Supreme Court. On July 11, 2003, he filed a *pro se* motion for delayed appeal pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a);[2] however, on September 10, 2003, the Ohio Supreme Court denied petitioner's motion for delayed appeal. Exhibits 15 and16 to *Return of Writ*. On February 24, 2003, petitioner filed a *pro se* application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). Petitioner asserted as follows:

> 1. Appellant was denied his constitutional right to the effective assistance of appellate counsel on direct appeal pursuant to the *Strickland* analysis.
>
> 2. Appellant was denied his constitutional right to the effective assistance of appellate counsel on direct appeal due to an actual

---

[1] On October 17, 2002, petitioner filed a motion for judicial release, which motion was later withdrawn at petitioner's request. Exhibits 17 and 18 to *Return of Writ*.

[2] Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a) provides in relevant part:

> In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the appellant may seek to file a delayed appeal by filing a motion for delayed appeal and a notice of appeal. The motion shall state the date of entry of the judgment being appealed and adequate reasons for the delay.

4

conflict of interest in that counsel's dual role as both trial and appellate counsel prevented him from raising the errors now asserted that were the result of his ineffectiveness as trial counsel.

3.   Appellant was denied his constitutional right to the effective assistance of trial counsel.

4.   Appellate counsel failed to raise as an assignment of error the amendment to the indictment in violation of Crim. R. 7(D) which changed the identity of the crime charged by increasing the degree and penalty from a fourth degree offense to a third degree offense. Trial counsel was ineffective by permitting the amendment to the indictment at the onset of trial without preparing a defense for such.

5.   Appellate counsel failed to raise the fundamental unfair surprise that resulted from the amendment to the indictment based on an insufficient original indictment that set forth ambiguous and misleading information by listing incorrect statutory and degree designations that were not in conformity with the subsumed findings.

6.   Appellate counsel failed to raise as an assignment of error the absence of appellant at a critical stage of trial where... the amendment to the indictment was agreed to by counsel without appellant's knowledge.

7.   Appellate counsel failed to raise as an assignment of error the vindictive prosecution due to the augmentation of the charges solely because appellant exercised his right to a jury trial.

8.   Appellate counsel failed to raise as an assignment of error the extensive and exceptionally flagrant prosecutorial misconduct that infected the trial with such unfairness as to deprive appellant of his right to due process.

9.   Appellate counsel failed to raise as an assignment of error the backward jury instructions that relieved the state of its burden of persuasion by requiring a finding of guilt of the higher offense by only determining the elements of the lesser offense.

10.  Appellate counsel failed to address the incorrect journal entry which subjects appellant to bad time and post release control when the sentencing transcript does not reflect that appellant was given such notice at the sentencing hearing.

5

Exhibit 19 to *Return of Writ*.  On May 19, 2003, the appellate court denied the application.  Exhibit

20 to *Return of Writ*.  Petitioner filed a timely appeal of the appellate court's decision to the Ohio

Supreme Court.  He asserted the following propositions of law:

> 1.   Ohio Rule of Appellate Procedure, App. R. 26(B), is an
> inadequate remedy of law to vindicate the denial of the assistance of
> appellate counsel.
>
> 2.   Appellant was denied the assistance of conflict free counsel on
> appeal.
>
> 3.   In exercising his constitutional right to a trial by jury, the State
> vindictively prosecuted the appellant in violation of the U.S.C.A.
> Const. Amends. 5, 6, 14; O. Const. Art. I, §§10, 16.
>
> 4.   Appellant was not informed by the trial court that he would/will
> be subject to the collateral consequences of post release control,
> §2967.28, which is unconstitutional on its face....
>
> 5.   Appellant was denied due [process] of law... by being denied a full
> and fair opportunity to present all his issues to the court of appeals,
> resulting in a fundamentally unfair judicial proceeding.
>
> 6.   It was obligatory upon the court of appeals to appoint appellate
> counsel to represent, file, and brief the appellant's App. R. 26(B)
> application to reopen.

Exhibit 21 to *Return of Writ*.  On September 10, 2003, the Ohio Supreme Court dismissed the appeal

as not involving any substantial constitutional question.  Exhibit 22 to *Return of Writ*.[3]

On June 15, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of

the Constitution of the United States based upon the following grounds:

---

[3] Petitioner has pursued other state court actions regarding his conviction and sentence;
however none of these actions is relevant to the claims raised herein.  *See* Exhibits 23-35.

1.   Petitioner was denied his constitutional right of effective assistance of trial counsel.

2.  Petitioner was prejudiced by the prosecutor's misconduct.

A.  The State's prosecutor, with malice aforethought, enhanced the fourth degree felony charge to a third degree felony for petitioner's refusal to plea[d] guilty, and the State's discovery of the perjured testimony in count one.  Thus, the findings of the grand jury were broadened, from the maximum penalty of 18 months imprisonment to five years imprisonment, because petitioner exercised his right to trial by jury.

B.  The State's prosecutor failed to adhere to his legal duties to inform the petit jury of the perjured testimony in count one, and repeatedly vouched for this testimony knowing it to be false, during the trial.

C.  The State's prosecutor was permitted to vouch for allegations that petitioner was neither charged nor convicted [of].

D.  The State's prosecutor expressed his blatant contempt for the petitioner.

E.   The State's prosecutor expressed his contempt for defense witness.

F.   The State's prosecutor vouched for the State's witness' unsupported opinion.

3.  Petitioner was denied his right to a fair trial.

A.  The trial court blatantly allowed the petitioner to be punished for exercising his right to a fair and speedy public trial.

B.  The trial court committed prejudicial reversible error in amending the findings of the grand jury.

C.  The trial court committed prejudicial reversible error when it overruled defense motion for acquittal.

D.  The trial court committed prejudicial reversible error in failing to order a directed verdict upon the motion for acquittal at the close of the State's case.

E.  The trial court committed prejudicial reversible error in failing to instruct the petit jury on the lesser included offense(s).

F.  The trial court committed prejudicial reversible error in permitting, over objection of defense counsel, the prosecutor to cross-examine the petitioner on prejudicial, inflammatory matters, in the form of prior bad acts that were misdemeanors, and some never having been charged or convicted [sic].

G.  The trial court committed prejudicial reversible error in failing to grant a new trial upon the juror misconduct.

H.  The trial court committed prejudicial reversible error for [failing] to adhere to the mandates of Senate Bill Two, Ohio's sentencing law.

I.  The trial court committed prejudicial reversible error in failing to give the proper jury instructions to the petit jury at the close of trial.

J.  The trial court committed prejudicial reversible error in imposing a four year prison term and five thousand dollar fine....

K.  The trial court committed prejudicial reversible error in [appointing] trial counsel to prosecute the appeal (conflict of interest).


4.  Petitioner was denied his right to effective appellate counsel and petitioner was denied his right to fairly present his case in the State of Ohio's appellate procedure.

A.  Appellate counsel failed to secure a complete record of the proceedings.

B.  Appellate counsel and trial counsel are one and the same, thus due to his conflict of interest, failed to raise his own errors that occurred at trial, and consequently petitioner was denied meaningful appellate review and the opportunity to raise his claims fairly in the state's appellate process.

C.  Appellate counsel failed to preserve all constitutional deprivations upon the record in the limited state court proceedings.

D.  Appellate counsel failed to adequately support his brief of the appellant.

8

E.   Appellate counsel's performance was so deficient, and the prejudice caused thereby [that] petitioner had not the counsel the Sixth Amendment guarantees.

F.  Appellate counsel failed to raise [the issue that] the conviction is void pursuant [to] state and federal constitutions; the trial court, and prosecutor... have punished the petitioner for exercising his rights to a jury trial and for rejecting the six month jail sentence offered on October 17, 2001, at the conclusion of the pre-trial conference, and in retaliation for the fact [that] the indictment and chain of events therein was based on perjured testimony and falsified police reports[.] [T]he State of Ohio altered the findings of the grand jury and enhanced the fourth degree felony to a third degree felony.

G.  Appellate counsel failed to raise the fundamental unfair surprise that resulted from the enhanc[ment] at the beginning of trial.  Thus, the State of Ohio erred in not dismissing this indictment and resubmitting the alleged facts without the known false testimony and police reports, as these falsified allegations against the petitioner by his wife clearly prejudiced the 10 female jurors.

H.  Appellate counsel failed to raise as an assignment of error the extensive and exceptionally flagrant prosecutorial misconduct that infected the trial with such unfairness as to deprive the petitioner due process of law.

I.  Appellate counsel failed to raise in his assignment of error[s] the backward jury instructions that relieved the State of Ohio of its [burden] of persuasion by requiring a finding of guilt of the greater offense by only determining the elements of the lesser offense.

J.  Appellate counsel failed to address the incorrect journal entry; which subjects petitioner to bad time and post release control, when the sentencing transcript manifests [that] the trial court never informed petitioner of such punishment at sentencing.

On January 18, 2005, claim one was deleted from the petition pursuant to petitioner's request.  *See*

Doc. No. 11.  It is the position of the respondent all of the remainder of petitioner's claims are

procedurally defaulted or without merit.

### III.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, ,459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is  precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This

"cause and prejudice" analysis also applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

In claim two, petitioner asserts that he was denied a fair trial due to prosecutorial misconduct.  This claim is readily apparent from the face of the record, and therefore should have been raised on direct appeal, but was not.  Further, petitioner now may no longer present such claim to the state courts under Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

In claim three (A), petitioner asserts that the trial court improperly punished him for exercising his right to trial; in claim three (B), petitioner asserts that the trial court committed reversible error by "amending the findings of the grand jury.*"  See Petition*.  These claims likewise are readily apparent from the face of the record, and should have been raised on direct appeal, but were not.  Petitioner attempted to include such claims in his November 21, 2002, *pro se* motion to supplement his appellate brief; however, petitioner's motion to supplement his appellate brief  -- filed six months after oral argument -- was untimely, *see* Exhibit 11 to *Return of Writ*; Ohio App.R. 18,[4] and the appellate court denied the motion to supplement as moot.[5]  *See* Exhibit 14 to *Return of*

---

[4]  Ohio Appellate Rule 18 provides in relevant part:

(A) Time for serving and filing briefs

... [T]he appellant shall serve and file the appellant's brief within twenty days after the date on which the clerk has mailed the notice required by App. R. 11(B). The appellee shall serve and file the appellee's brief within twenty days after service of the brief of the appellant. The appellant may serve and file a reply brief within ten days after service of the brief of the appellee.

***

(C) Consequence of failure to file briefs

*Writ.* Further, petitioner failed to file a timely appeal of the appellate court's December 9, 2002,

decision denying his direct appeal to the Ohio Supreme Court, and his July 11, 2003, motion for

delayed appeal was summarily denied.

Similarly, in claim three (C) and (D), petitioner asserts that the evidence is constitutionally

insufficient to sustain his conviction; in claim three (F) petitioner asserts that he was denied a fair

trial in connection with inquiry by the prosecutor regarding prior bad acts; in claim three (G)

petitioner asserts that he was denied a fair trial due to juror misconduct; in claim three (H) and (J),

petitioner asserts that he was improperly sentenced.[6] All of these claims were properly raised on

direct appeal; however, petitioner failed to file a timely appeal of the appellate court's decision

---

> If an appellant fails to file the appellant's brief within the time provided by this
> rule, or within the time as extended, the court may dismiss the appeal. If an
> appellee fails to file the appellee's brief within the time provided by this rule, or
> within the time as extended, the appellee will not be heard at oral argument
> except by permission of the court upon a showing of good cause submitted in
> writing prior to argument; and in determining the appeal, the court may accept the
> appellant's statement of the facts and issues as correct and reverse the judgment if
> appellant's brief reasonably appears to sustain such action.

[5] The appellate court denied petitioner's motion to supplement his appellate brief with
additional claims as follows:

> This case was finalized by Decision and Judgment Entry on December 9, 2002.
> Therefore, the November 21, 2002 "Motion for Leave to Supplement Appellant
> Brief"; the December 4, 2002 "Memorandum Contra"; and the December 11,
> 2002 "Appellant's Reply to Appellee's Memorandum Contra" are denied as moot.

Exhibit 14 to *Return of Writ.*

[6] As noted by respondent, petitioner's allegation that he was improperly sentenced raises
an issue of state law only, and is therefore inappropriate for federal habeas corpus review. *See*
28 U.S.C. §2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735,
738 (6th Cir. 1988).

denying these claims to the Ohio Supreme Court, and his motion for delayed appeal was summarily denied.

The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court's denial of a petitioner's motion for delayed appeal under such circumstances "constitutes a procedural ruling sufficient to bar federal court review of [petitioner's] habeas corpus petition." *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup. Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup. Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits. Indeed, this court has previously reached this conclusion, albeit in unpublished opinions. *See Hall v. Huffman*, No. 98-3586, 2000 WL 1562821, at *3 (6th Cir. Oct.11, 2000) (unpublished); *Shabazz v. Ohio,* No. 97-3085, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (unpublished).

> We therefore conclude that Bonilla's grounds for relief have been procedurally defaulted. *See Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir.2000). Bonilla failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the provisions of Ohio Sup. Ct. R. II, Section 2(A)(4). Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar. *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir.1996).

*Id.*  In view of the foregoing, this Court likewise concludes that, due to his failure to file a timely appeal to the Ohio Supreme Court, petitioner committed a procedural default as to claims three (A) - (D), (F) - (H) and (J).

Petitioner asserts in claim three (E) and (I) that he was denied a fair trial because the trial court failed to provide proper jury instructions or to instruct the jury on lesser included offenses. These claims are readily apparent from the face of the record, and should have been raised on direct appeal, but were not.  In claim four (A), petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to secure a complete record of the proceedings.  In claim four (D), petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to "adequately support his brief."  *See Petition*.  These claims should have been raised in petitioner's application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), but were not.  *See* Exhibit 19 to *Return of Writ*.  Again, petitioner now may no longer present any of the foregoing claims to the state courts under Ohio's doctrine of *res judicata*.  *See State v. Cole*, *supra; State v. Ishmail, supra*; *State v. Perry.*[7]

This Court must determine whether or not the state relied upon the procedural rules at issue to dispose of petitioner's claims, and whether the procedural rules at issue constitute an adequate and independent bases upon which to foreclose review of petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims.  *See Maupin v. Smith*, 785 F.2d at 138.

_____

[7]  In claim three (K), petitioner asserts that the trial court committed reversible error by appointing the same attorney to represent him at trial and on direct appeal.  This claim is again raised in claim four, and is addressed, *infra*, along with petitioner's other claims of ineffective assistance of appellate counsel.

14

Consideration of petitioner's claim two and claim three (E) and (I)  is barred due to petitioner's failure to properly raise these claims on direct appeal.   Consideration of petitioner's claim four (A), and (D) is barred due to petitioner's failure to present such claims in his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  As to all of these claims, the state courts were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default.  Additionally, the procedural rules barring these claims constitute adequate and independent state grounds for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged constitutional defects.  The time limitations for filing appeals and the requirement that all available claims be asserted in the first such proceeding serve the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  Finally, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*.

Consideration of claim three (A)- (D), (F) - (H), and (J), is barred due to petitioner's failure to file a timely appeal to the Ohio Supreme Court.  As previously noted, the Sixth Circuit has concluded that such failure constitutes a procedural default of those claims.  *Bonilla v. Hurley, supra*.  This Court therefore concludes that the second and third parts of *Maupin* have been met.

Petitioner can still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.  As cause for his failure to raise claim two (prosecutorial misconduct) and claim three (A) (petitioner was punished for exercising his right to jury trial), (B) (trial court improperly permitted amendment of indictment), (E) (failure to issue jury instructions on lesser

15

included offenses) and (I) (improper jury instructions) on direct appeal, the Court presumes that petitioner asserts the ineffective assistance of appellate counsel.[8]  The ineffective assistance of counsel can constitute cause for a procedural default, so long as that claim has been presented to the state courts and is not, itself, procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

Petitioner asserts the ineffective assistance of appellate counsel due to his attorney's failure to raise on direct appeal issues of prosecutorial misconduct.  Petitioner alleges that the prosecutor improperly failed to inform the jury that his ex-wife, Kristina Walker, lied when she called police and accused petitioner of firing a gun at her, accusations that eventually led to the charges at issue here.  Petitioner also asserts that the prosecutor improperly vouched for the truth of her accusations at trial.  Further, petitioner asserts that the prosecutor expressed contempt for petitioner and for defense witnesses, and improperly vouched for the credibility of state witnesses.  *See Petition*.

The state appellate court rejected petitioner's claim of ineffective assistance of appellate counsel for failing to raise the issue of prosecutorial misconduct as follows:

> The *Strickland* test requires an appellant to: 1) prove that his counsel was "deficient for failing to raise the issues he now presents"; and 2) demonstrate that there was a "reasonable probability of success had he presented those claims on appeal."  *State v. Sheppard*, 91 Ohio St.3d 329, 330, 2001-Ohio-52, 744 N.E.2d 770, citing State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three

---

[8]  Petitioner cannot assert the ineffective assistance of counsel as cause for his procedural default of claims three (E) and four (A),(D), since a claim of ineffective assistance of counsel in this regard was never presented to the state courts.  *See Edwards v. Carpenter, supra*, 529 U.S. at 451-52. Also, the ineffective assistance of appellate counsel cannot constitute cause for petitioner's procedural default of claim three (C), (D), (F)- (H), and (J); these claims are waived due to petitioner's failure to file a timely appeal to the Ohio Supreme Court, where petitioner did not have the right to counsel.  *See Coleman v. Thompson*, 501 U.S. 722, 755-57 (1991); *Ross v. Moffitt,* 417 U.S. 600, 610 (1974).

of the syllabus. Moreover, if appellant establishes that the performance or conduct of his appellate counsel was deficient, appellant must then demonstrate that his appeal was prejudiced by counsel's deficient performance. To show prejudice, appellant must show that counsel's deficient performance denied appellant of an appeal "whose result [was] reliable." *Strickland v. Washington*, 466 U.S. at 687. We must review the merits of the omitted or inadequately presented claim when determining whether the appeal was reliable. *See State v. Reed, supra*, citing *Cross v. United States* (C.A. 11, 1990), 893 F.2d 1287, 1290. If the omitted or inadequately presented claim "would have reasonable probability of success on appeal, then *** it is necessary to find 'appellate counsel's [deficient] performance prejudicial because it affected the outcome of the appeal." *Heath v. Jones* (C.A. 11, 1991), 941 F.2d 1126, 1132, quoting *Cross v. United States*, 893 F.2d at 1290.

***

... Walker argues that his appellate counsel was ineffective for failing to argue on appeal several instances of flagrant prosecutorial misconduct that resulted in an unfair trial and denied Walker his due process rights. Walker's argument is founded upon various statements made by the prosecutor in his opening statement, closing statement, and during trial that, Walker alleges, resulted in an unfair trial.

A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. *See State v. Keenan* (1993), 66 Ohio St.3d 402, 402-405, 613 N.E.2d 203; *State v. Gest* (1995), 108 Ohio App.3d 248, 257, 670 N.E.2d 536. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *See Smith v. Phillips* (1982), 455 U.S. 209, 102 S.Ct. 940. The effect of the prosecutor's misconduct must be considered in light of the whole trial. *See State v. Durr* (1991), 58 Ohio St.3d 86, 94, 568 N.E.2d 674; *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768. We also note that trial counsel did not object to many of the statements that Walker has taken issue with here. Therefore, because Walker's attorney failed to object during the state's alleged misconduct, we will review under a plain error standard. *See State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. Plain error exists when but for the error the outcome of the trial would have been different. *See State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

Walker argues that the prosecutor's questioning based on false information was improper.  Apparently, count one of the indictment, felonious assault, was based on the victim's false statement to the police.  The victim told police that Walker drove by her house in a truck and pointed a gun at her.  This led her to call the police.  The police responded by attempting to stop Walker's vehicle, but Walker fled.  Walker was eventually arrested several days later and subsequently indicted on one count of felonious assault and one count of fleeing the police.

The prosecutor, during trial, questioned Walker about the incident that led to his act of fleeing police.  The prosecutor engaged Walker in the following colloquy:

Prosecutor: "You have been intimidating her, haven't you?"

Morford: "I'm going to object, Your Honor."

Court: "Overruled."

Walker: "I got letters right here from her when I was in the jail.  It says that she realizes it wasn't me driving that truck and there's a truck that's been going by there a lot since then.  Right there it is.  That's her handwriting."

Prosecutor: "My question was, you have been intimidating her, haven't you?"

Walker: "I'm not intimidating her.  How am I intimidating her?"

Prosecutor: "Telling her to come here and lie if she was going to testify."

Walker: "I didn't tell her, I told her to come here and tell the truth."

Prosecutor: "Told her to hide from a subpoena?"

Walker: "No, I ain't told her to hide from nothing.  I told her to come here and tell the truth because she lied on me and had me put in here.  If Clyde Ferguson would've been here today, he could have told everybody how she lies on me."

Prosecutor: "You've offered, her lying on you has no connection to whether a police officer was behind you with lights and a siren on

18

and [you] not complying. [That] has nothing to do with Kristina lying, does it?"

Walker: "I got a little black Dodge K-car, red top that I bought her. I don't own no pick-up truck, I haven't owned no pick-up truck."

Prosecutor: "Listen to me. That's not what I asked you. If Kristina lies everyday of her life and lies on you, let's say that she was lying to [the police officer] that night and just made up that you were shooting at her. The fact is when [the police officer] started behind you with lights and siren on, that didn't change the fact that a person is supposed to pull over. It has nothing to do with her lying, does it?"

In the context of the entire trial, we cannot conclude that it was not improper for the prosecutor to question Walker in the manner that he did. The prosecutor was attempting to clarify what happened that night, rather than to mislead the jury. The prosecutor's point was not that Walker was, in fact, the one who pointed a gun at the victim, just that it was of no consequence, once the police attempted to signal him to stop his vehicle. Nor can we say that this line of questioning resulted in an unfair trial. Walker has failed to show how the result of his trial would have been different had the prosecution refrained from this line of questioning. Therefore, we cannot find that Walker was prejudiced.

Walker further cites to several segments of the prosecutor's closing statement in support of his allegations of prosecutorial misconduct. Specifically, Walker argues that it was improper for the prosecutor to comment on the credibility of witnesses and to state his opinion about Walker's guilt. He also alleges that the prosecutor habitually made misleading assertions as to the distinguishable elements of "risk" and "substantial risk" by using the definitions interchangeably during the trial. Walker also alleges that the prosecution compared his case to that of O.J. Simpson, compared Walker's brother to that of an animal, and compared the reasonable doubt standard to that of "the World Trade Center thing." All of this in total, Walker asserts, demonstrates prosecutorial misconduct.

There is no question that an attorney should avoid expressing personal beliefs or opinions with respect to the guilt of the accused, as well as the credibility of witnesses. *See State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293. This is especially true in the case of a prosecutor in a criminal case. *See State v. Rahman* (1986), 23 Ohio St.3d 146, 154, 429 N.E.2d 401. However, with that said, it

19

is not improper for a prosecutor to comment upon the evidence in his closing argument and to state the appropriate conclusions to be drawn therefrom. Accordingly, a prosecutor may comment fairly on a witness' credibility based upon his or her in-court testimony, or the guilt of the accused based on the evidence presented. *See State v. Keene*, 81 Ohio St.3d 646, 666, 2998-Ohio-342, 693 N.E.2d 246 (holding that the prosecutor's description of a witness as "one of the best witnesses any of us has seen in quite awhile" was properly supported by the record).

However, as noted above, a prosecutor may not state his or her own unsupported belief as to whether or not a witness is telling the truth. *See State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. Such actions "invade *** the province of the jury, and invite *** the jury to decide the case based upon the credibility and status of the prosecutor." *State v. Draughn* (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790. Nevertheless, in evaluating the conduct in this case, we are mindful that prosecutors are granted wide latitude in closing arguments. *See State v. Rahman*, 23 Ohio St.3d at 154. Furthermore, this Court will consider the effect of any improper statement in the context of the entire trial. *See State v. Keenan*, 66 Ohio St.3d at 410.

In the case *sub judice*, the prosecutor, without objection from the defense, began his opening with a description of "reasonable doubt": "Beyond a reasonable doubt does not mean beyond a shadow of a doubt. There's nothing that we could say that [is] beyond a shadow of a doubt. That World Trade Center thing, we could say, 'That would never happen.' Well, it did. The sun comes up everyday. We keep depending on that, but it's not beyond a shadow of a doubt that it will happen. So that's not the certainty that you have to reach. If you did, no one would ever be convicted." While these comments may have been a little insensitive at the time, they certainly could help the jury to understand the complicated, and often misunderstood, standard of "reasonable doubt." We cannot say that these comments were improper, or that the outcome of the trial would have been different had the prosecutor not made these comments.

The prosecutor continued, in opening, to comment on what the evidence the state would be presenting throughout the course of the trial would prove. For example, the prosecutor stated that "The evidence will be in this case that on July 22, 2001, here in Lawrence County, Deputy Bollinger, who is an officer with Lawrence County Sheriff's Department, he was on duty that evening. He got a call from the dispatcher at the Sheriff's Department [who] said [that at]

96 Daisy Lane a lady named Kristina Walker, who the evidence will be is [the] separated wife from the defendant here, [Irvin] Walker, had called in to the Sheriff's Department and alleged that [Irvin] Walker had come by her house in a truck *** and had shot at her residence." These types of predictive statements in opening are proper.  In light of the entire record, the state did present evidence during trial that supported its statements made in opening.  Thus, the prosecutor's opening statement did not rise to the level of prosecutorial misconduct.

In closing argument, the prosecutor made several statements that Walker asserts now were improper.  Specifically, Walker argues that it was improper for the prosecutor to compare this case to that of O.J. Simpson.  In closing, the prosecutor attempted to describe to the jury what it means to drive a vehicle in a manner that poses a substantial risk of serious physical harm to persons or property.  The evidence at trial showed that, when Walker fled the police, he was driving down a residential street at upwards of eighty m.p.h.  To contrast that, the prosecutor made the following comparison: "You'll hear the definition.  Serious physical harm to people can be death, significant impairment, acute pain.  On property it causes a damage, the risk of damage, if you would have had the damage, that means a risk of losing its value or lose use or enjoyment like [if] you would hit anybody's car.  If there had been a little red wagon out on the tree line, that was a substantial risk of harm to that property.  That's all it takes in this case.  That's all it takes, just a risk of that.  By definition, you don't have to go further [than] to just say that somebody is going to be so reckless [] to drive eighty (80) [m.p.h.] down a residential street, that itself meets this element.  You say, 'When will that not be the case?'  There are some chases where people don't go eighty (80) [m.p.h.].  Remember O.J. Simpson?  That would be a, they called that a 'Slow Speed Chase.'  If I was talking and trying to convict him of this [offense] in this court room today, you would say, 'No, because really as slow as that was, how was there any risk of harm to anybody?' He [would have] been guilty of eluding police because he wouldn't stop.  Some people go forty (40) [m.p.h.] and they just won't stop.  The policeman keeps going and they just won't stop.  There are those instances."  During the course of closing, the prosecutor also drew conclusions as to the credibility of the witnesses based on the evidence presented at trial.

The state's use of the O.J. Simpson chase as an example where there was no substantial risk of serious physical harm was entirely proper.  The prosecutor was not making an inference from the O.J. Simpson

case, rather he was giving the jury an instance where one could determine that there was not a substantial risk. The prosecutor's comments about the credibility of witnesses were also proper. The state was permitted to suggest a logical conclusion that was to be drawn therefrom. *See State v. Thompson* (1993), 87 Ohio App.3d 570, 582, 622 N.E.2d 735. The prosecutor was also permitted to declare that the evidence supports the conclusion that a witness was lying, was not telling the truth, was scheming, or had ulterior motives for not telling the truth. *See State v. Draughn*, 76 Ohio App.3d at 670. The prosecutor could also comment fairly on witness credibility or the guilt of the accused based on the evidence presented. *See State v. Keene, supra.* Furthermore, the test for prejudice in closing arguments is "'whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125, 200-Ohio-30, 734 N.E.2d 1237, quoting *State v. Smith*, 14 Ohio St.3d at 14, 470 N.E.2d 883.

Therefore, because the prosecutor's comments were not improper, and because Walker has failed to prove that the outcome of the case would have been different had the prosecutor not made the comments, we cannot say that Walker's appellate counsel was deficient for failing to raise the issue of prosecutorial misconduct on appeal. *See Strickland v. Washington* and *State v. Sheppard, supra.*

Exhibit 20 to *Return of Writ*.

Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption

of correctness:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* Further, the state court's decision is binding on this Court unless that decision is contrary to or

involves an unreasonable application of clearly established federal law as determined by the United

States Supreme Court:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

>Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The standard for reviewing a claim of ineffective assistance of counsel is twofold*:*

>First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Upon review of the entire record, including the trial transcript, and for the reasons discussed by the state appellate court, this Court likewise concludes that all of petitioner's allegations of prosecutorial misconduct are without merit. Petitioner complains that the prosecutor compared his brother to an animal during cross examination of petitioner regarding the unlikelihood that police would have mistaken petitioner for his brother:

> Q.  Your purpose in calling your brother was that, to show the jury,
> I suppose, that it might have been him that night?
>
> A.  No, that's the truth.

> Q.  What's the truth?
>
> A.  To bring him in here and prove it to the jurors that I could be mistaking [sic] somebody else can be mistaken for me.
>
> Q.  Okay.  The point was, does he look like you, other than he's got this big mane down his back there is quite a difference.

*Id.*, at 143.  Also, in addition to the statements referred to by the state appellate court, petitioner complains of the following statements by the prosecutor in closing argument:[9]

> We got [sic] a totally credible individual that wasn't impeached one iota.  Very little cross examination.  He is trained to do this.  They even acknowledge he's not making up that there was a chase.  The question is, is it the defendant.
>
> Now, the Judge will instruct you on credibility.  You're the judges of that.  That's why we bring you in from your day to day lives and decide who is telling the truth up here....

*Transcript*, at 149.

> Obviously, the brother, his testimony is ridiculous.  He'll tell you about common sense.  Apply that to this.  Nothing he said made any common sense.  It was totally ridiculous.
>
> Then the defendant, credibility, do you believe him?  You saw it, the way he testified and what he said, his background.  Do you believe him?
>
> ***
>
> I want to bring out a few points to you, but I think everybody here, you don't have to be a lawyer to figure this one out.  Some cases are closer.  This one is not close at all.

*Id.*, at 150-51.

---

[9]  Petitioner does not specify in his federal habeas corpus petition the specific statements complained of; however, the Court presumes that he raises here the same allegations presented in his application for reopening of the appeal.  *See* Exhibit 19 to *Return of Writ*.

25

As noted by the state appellate court, because petitioner failed to object to any of the statements complained of, the issue of prosecutorial misconduct would be reviewed on appeal for plain error only.

> Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise.

*State v. Allen,* 73 Ohio St.3d 626, 633 (1995), citing *State v. Long* (1978), 53 Ohio St.2d 91, 96-97 (1978); *see* Exhibit 20 to *Return of Writ*.  Again, petitioner cannot meet this standard.

"[T]he personal opinion of counsel has no place at trial." *United States v. Bess*, 593 F.2d 749, 753 (6th Cir. 1979)(Statements by prosecutor in closing "If the United States did not believe the defendant was guilty of committing these charges in the indictment... this case, of course, would have never been presented to you in the first place" and that prosecutor believed "beyond a reasonable doubt that the defendant" was guilty were improper and required reversal of defendant's convictions).

> [A]n attorney properly may state, "I believe that the evidence has shown the defendant's guilt," *United States v. Wayman*, 510 F.2d 1020, 1028 (5th Cir.), *Cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975), but he may not state, "I believe that the defendant is guilty." Similarly, an attorney properly may state, "No conflict exists in the testimony of the prosecution's witnesses." *United States v. McDowell,* 539 F.2d 435, 438 (5th Cir. 1976), but he may not state, "The prosecution's witnesses are telling the truth," or "I believe that the prosecution's witnesses are telling the truth." *United States v. Lamerson*, 457 F.2d 371, 372 (5th Cir. 1972)*. United States v. Morris,* 568 F.2d 396, 402 (5th Cir. 1978). *See also United States v. Sawyer*, 347 F.2d 372 (4th Cir. 1965).

*Id*., at 757 n.10.

In this case, the record fails to reflect that the prosecutor improperly vouched for the credibility of Kristina Walker, or for the credibility of any of the state's witnesses and, contrary to

the petitioner's allegations, neither did the prosecutor make any inappropriate expressions of contempt for the defense or defense witnesses.  The record reflects that the prosecutor did not dispute petitioner's statement that Kristina had lied to police when she accused him of shooting at her.  Additionally, defense counsel elicited from police on cross examination that petitioner had not been convicted of any shooting offense involving Kristina Walker on the date at issue.  *Transcript*, at 99-100.  Further, evidence of guilt was strong.  Aaron Bollinger, a deputy for the Lawrence County Sheriff's Department, was dispatched to investigate the call from Kristina Walker.  He knew the Walkers were separated, knew petitioner by name, and recognized him when petitioner pulled up to Kristina's home in a truck and Bollinger shone his flashlight into the open window.  *Id.*, at 63-64.  A warrant had been issued for petitioner's arrest.  *Id.*, at 67.  Bollinger again recognized petitioner's face during the car chase that ensued, when petitioner stopped at a stop sign and turned his head.  *Id.*, at 77.  Bollinger activated police sirens and lights, but petitioner refused to stop.  At times, petitioner was driving at speeds of 70 to 80 m.p.h..  *Id.*, at 71, 77-78, 82, 86, 89.  Although petitioner's brother, Roger Walker, testified that he had been mistaken for petitioner in the past, he denied committing the acts at issue here.  *Id.*, at 109-110; 113.[10]  Further, Roger had long hair, and petitioner did not.  *Id.*, at 112.

For all of the foregoing reasons, petitioner has failed to establish the ineffective assistance of appellate counsel due to failure to raise the issue of prosecutorial misconduct.

Petitioner also asserts that he was denied the effective assistance of appellate counsel due to counsel's failure to raise on appeal a claim that the trial court improperly permitted pre-trial

---

[10]  Petitioner testified in his own defense.  He denied committing the acts alleged.  *Id.*, at 121-146.

amendment of the indictment.  He argues that amendment of the indictment constituted prosecutorial vindictiveness, and that the prosecutor improperly requested to amend the indictment to punish petitioner for exercising his right to a jury trial.

The state appellate court rejected this claim as follows:

> ... Walker argues that his appellate counsel was ineffective for failing to raise on appeal an assignment of error based on the state's amendment of the indictment charging him with a violation of R.C. 2921.331, failure to comply with an order or signal of a police officer.  Walker argues that, at a pretrial meeting held outside of his presence, his counsel and the prosecutor agreed to amend the indictment from a violation of R.C. 2921.331(B)(b), a specified fourth-degree felony, to a violation of R.C. 2921.331(B)(c)(5)(a)(ii), a third-degree felony.  Walker first argues that the original indictment is ambiguous, misleading, and fails the mandate of Crim. R. 7(B). Walker further argues that the amendment contained a "substantial risk" element that became a critical element at trial.  He argues that everyone involved was aware of the "substantial risk" element except himself, and that he was denied the ability to adequately prepare a defense strategy to that element.  Thus, Walker concludes, trial counsel's agreed amendment of the indictment without his knowledge constituted a fundamental unfairness that resulted in clear error.  We disagree.

> Crim. R 7(B) provides:

> "The indictment shall *** contain a statement that the defendant has committed a public offense specified in the indictment. *** The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved.  The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged. *** Each count of the indictment *** shall state the numerical designation of the statute that the defendant is alleged to have violated.  Error in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment ***, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant."

28

Count Two of the indictment filed on September 12, 2001, states the following:

"Irvin F. Walker, on or about July 22, 2001, at Lawrence County, Ohio, did operate a motor vehicle, as defined in Section 4501.01 of the Revised Code, so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop, and the operation of the motor vehicle caused substantial risk of serious physical harm to persons or property, in violation of Section 2921.331(B)(b) of the Ohio Revised Code. Said act occurred in Lawrence County, Ohio, and is contrary to Ohio Revised Code Section 2921.331(B)(b), Failure to Comply with Order or Signal of Police Officer, F-4."

The language used in the indictment satisfies the notice requirement of Crim. R. 7(B). *See State v. Jenkins,* Lawrence App. No. 02CA5, 2003-Ohio-1058, at ¶31-33. It uses ordinary and concise language of the charge and provides the numerical designation of the statute that Walker was alleged to have violated. Walker argues that the misnumbering of the statute in the indictment prejudiced his defense because the original statute cited, R.C. 2921.331(B)(b), does not contain as an element the "substantial risk" specification that R.C. 2921.331(B)(C)(5)(a)(ii) has. "The misnumbering of the statute in the indictment does not invalidate the indictment." *State v. Schoolcraft*, Meigs App. No. 02CA1, 2002-Ohio-5947, at ¶10, citing *State ex rel. Dix v. McAllister*, 81 Ohio St.3d 107, 108, 1998-Ohio-646, 689 N.E.2d 561; *see, also*, Crim. R. 7(B), *supra*. Moreover, we do not see how Walker has suffered prejudice. The words of the indictment contained the appropriate "substantial risk" specification, so that Walker was sufficiently on notice to prepare an adequate defense to that element. "Generally, an indictment is sufficient if it recites the language of the relevant criminal statute." *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, 783 N.E.2d 591, at ¶22.

At the beginning of trial, the state moved to amend the indictment pursuant to Crim. R. 7(D) in order to correct the error in the numerical designation of the statute Walker was alleged to have violated.

Crim. R. 7(D) provides:

"The court may at any time before, during, or after trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of

any variance with the evidence, provided no change is made in the name or identity of the crime charged."

"Crim. R. 7(D) provides for liberal amendments to the indictment if there has been any defect or imperfection unless it is clear that the accused has been misled or prejudiced by [the error]." *State v. Siferd* at ¶22.

The record provided to us contains a transcript of the proceedings held on October 18, 2001.  At those proceedings, the prosecutor moved the court to amend the numerical designation in the indictment, but "not the name or identity of [the crime charged]." The court allowed the prosecutor to amend the numerical designation of the violated section of the Revised Code to 2921.331(B)(C)(5)(a)(ii).  The court even stated, in granting the motion, that "[t]he words can't be amended but the numbers [can be] ***."

The record shows that the words of the indictment were not amended. The name and identity of the crime charged remained "Failure to Comply with Order or Signal of Police Officer."  The state merely amended the code section under which Walker was charged. Moreover, as stated above, Walker was not prejudiced by the error in the numerical designation of the charge in the indictment.  Thus, amending the numerical designation in the indictment was permissible.  *See State v. Bailey*, 8th Dist. No. CR-400784, 2003-Ohio-1834, at ¶47-49.

In contrast to Walker's argument, the amendment did not add an essential element to the crime.  The original indictment, in the first paragraph under count two, stated that "Irvin F. Walker *** did operate a motor vehicle, ***, so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop, and the operation of the motor vehicle caused substantial risk of serious physical harm to persons or property ***."  (Emphasis added.)  Thus, simply amending the numerical designation of the statute under which Walker was charged did not add the "substantial risk" element as Walker argues.  The original indictment was sufficient to put Walker on notice that the state was charging him with the "substantial risk" element so that he could adequately prepare a defense.

The propriety of the indictment amendment is even more evident considering Walker's counsel below discussed the amendment with

30

the prosecutor at a pretrial conference and did not object to it.  Even when the prosecutor moved the court to amend the indictment, defense counsel stated that "I think the first paragraph [of the indictment] contains the words that make it a (C)(5)(a)(ii)" and "I can't really oppose [the amendment], your Honor."

***

Because the indictment met the criteria in Crim. R. 7(B), and because the amendment to the indictment was proper pursuant to Crim. R. 7(D), and because Walker has failed to show any prejudice, Walker's appellate counsel was not deficient for failing to raise the issues he now presents.  Therefore, Walker has failed the first prong of the *Strickland* analysis....

... Walker asserts that his appellate counsel was ineffective for failing to assign as error that the prosecution acted vindictively by amending the indictment solely because Walker exercised his right to a jury trial.  Walker asserts that his insistence to proceed to trial resulted in the prosecutor's manipulation of the indictment to serve the state's own interest while significantly prejudicing Walker's.  Walker posits that the prosecutor's manipulation was a result of his trial counsel's failure to perform in an adversarial role, and that his appellate counsel was ineffective for failing to raise these issues on appeal.  We find that this argument is wholly without merit.

A prosecutor has broad authority in determining whether to prosecute.  *See State ex rel. Murr v. Meyer* (1987), 34 Ohio St.3d 46, 516 N.E.2d 234.  To be sure, a prosecutor is free to bring charges against a defendant under any statute that proscribes the criminal behavior.  *See State v. Miles* (1983), 8 Ohio App.3d 410, 411, 457 N.E.2d 944; *see, also, State v. Bell* (1996), 112 Ohio App.3d 473, 484, 679 N.E.2d 44.  When the decision to prosecute, however, is based on vindictiveness "to punish a person because he has done what the law plainly allows him to do [, it] is a due process violation of the most basic sort.[.]" *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 363, 98 S.Ct. 663.  A vindictive purpose will be presumed "in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right ***."  *United States v. Goodwin* (1982), 457 U.S. 368, 373, 102 S.Ct. 2485.

Walker has failed to demonstrate that the amendment to the indictment was the result of any vindictiveness on behalf of the prosecutor.  Nor has he pointed to anything in the record that would

indicate that the amendment was a result of Walker exercising a legal right. The charges in the indictment were not elevated, merely amended to reflect the appropriate code section that accurately recited the language in the indictment. Even though the offense, originally categorized as a fourth-degree felony, was eventually prosecuted as a third-degree felony, "[i]n a pretrial context, there is no presumption that a prosecutor's desire to increase the severity of charges or penalties is vindictive." *State v. Sweet* (Sept. 9, 1994), 6th Dist. No. H-93-61, citing *State v. Johnson* (1991), 77 Ohio App.3d 212, 220-221, 601 N.E.2d 555; *State v. Wilson* (1988), 47 Ohio App.3d 136, 137-40, 547 N.E.2d 1185, citing *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, and *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663.

Therefore, because the record is devoid of any facts in support of Walker's claim of vindictive prosecution, Walker's appellate counsel was not deficient for failing to raise the issue on appeal. Once again, Walker has failed the first prong of the *Strickland* analysis. *See Strickland v. Washington* and *State v. Sheppard, supra.*

Exhibit 20 to *Return of Writ*. Again, these findings are entitled to a presumption of correctness pursuant to 28 U.S.C. §2254(d), (e), and petitioner has failed to establish any reason for this Court to disturb these findings here. *See Williams v. Taylor, supra.*

The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. *See, e.g., In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir.1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir.1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Combs v. Tennessee*, 530 F.2d at 698.

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

Here, the record indicates that the indictment provided petitioner with adequate notice of the charges against him. As noted by the state appellate court, the indictment was amended solely to

reflect the proper numerical designation of the criminal statute for the charge that was alleged.  The
factual allegations against petitioner remained the same.  Thus, this Court agrees that petitioner was
not prejudiced by amendment to the indictment, despite the fact that the penalty for the offense
thereby changed from a fourth to a third degree felony.  Further, defense counsel did not object to
amendment of the indictment as improper.

Petitioner alleges that amendment of the indictment constituted prosecutorial vindictiveness,
and that the prosecutor thereby punished petitioner for exercising his right to a jury trial.

> Prosecutorial vindictiveness can potentially be found in the pre-trial
> addition of charges following pre-trial assertions of protected rights.
> [*United States v. Andrews*,] 633 F.2d 449, 454 [(6th Cir. 1980)].
> However, if the charges are brought simply as the result of failure of
> the plea bargaining process, they are not vindictive. *Id*. at 456
> (following *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663,
> 54 L.Ed.2d 604 (1978) (finding not vindictive a superseding
> indictment bringing additional charges, filed after a failure of plea
> bargaining)).
>
> In order to satisfy the first element of this test, [petitioner] must
> therefore show more than that he chose not to accept a plea bargain
> ... and instead chose to assert his right to trial. Although the right to
> a trial by a jury of one's peers is a highly protected right, asserting
> this right by rejecting a plea bargain is not enough to provide
> evidence of an improper motive on the part of the prosecution.

*United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).  Measured by this standard, petitioner's
claim regarding improper amendment of the indictment and prosecutorial vindictiveness is without
merit.  Therefore, petitioner has also failed to establish the ineffective assistance of appellate counsel
due to his attorney's failure to raise this issue, or an issue regarding improper amendment of the
indictment, on appeal.

33

Lastly, petitioner asserts that he was denied the effective assistance of appellate counsel due to his attorney's failure to raise on appeal a claim of improper jury instructions.  The state appellate court denied this claim as follows:

> ... Walker argues that his appellate counsel was ineffective for failing to argue that the trial court erroneously instructed the jury. Specifically, Walker argues that the jury instructions were flawed because they required a finding of guilt of the higher offense, failing to comply with an order or signal of the police officer with substantial risk of serious physical harm to persons or property, by only determining the elements of the lesser offense, simply failing to comply with an order or signal of the police officer.  Walker has misconstrued the jury instructions.

> We initially note that no objections were made regarding the jury instructions.  "Failure to object to a jury instruction constitutes a waiver and any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus.  In *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, the Supreme Court of Ohio stated that "we have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver." Moreover, in discerning what constitutes plain error, "failure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not *per se* constitute plain error under Crim.R. 52(B)."  *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144, paragraph two of the syllabus.

> Walker alleges that the following instruction given by the court was backwards, in that it relieved the state of its burden to prove that Walker's failure to comply caused substantial risk of serious physical harm to persons or property.  Walker argues that the court instructed the jury that "If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of Failure to Comply with [an] Order or Signal of [a] Police Officer, then your verdict must be guilty."

> While the court did instruct the jury as Walker alleges, it did so only after an extensive explanation of the charge of Failure to Comply with an Order or Signal of a Police Officer, as well as a definition of

each element included in that charge. For example, the court instructed the jury that "In this particular case the defendant is charged with Failure to Comply with the Order or Signal of a Police Officer. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 22nd day of July, 2001 and in Lawrence County, Ohio the defendant operated a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop and the defendants [sic] operation of the motor vehicle cause a substantial risk of serious physical harm to persons or property."

Following that instruction, the court explained each element to the jury, briefly defining "Police Officer," "Motor Vehicle," "willfully," "cause," "risk of serious bodily harm" to both "property" and "persons," and "substantial risk." Therefore, the court did instruct the jury as to the "substantial risk" element, in contrast to what Walker argues. Thus, from a reading of the entire record, we cannot find plain error with the jury instructions.

Accordingly, Walker's appellate counsel was not deficient for failing to raise this issue on appeal. *Strickland v. Washington, supra.*

Exhibit 20 to *Return of Writ.* Again, the decision of the state appellate court is entitled to a presumption of correctness pursuant to 28 U.S.C. §2254(d), (e), and petitioner has failed to establish that the state court's decision is so unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor, supra.*

Again, due to the lack of objections by trial counsel, any claim regarding improper jury instructions would be reviewed on appeal for plain error only. However, when read in their entirety, the record reflects that jury instructions were not improper as to rise to the level of plain error:

In this particular case the defendant is charged with Failure to Comply with the Order of [sic] Signal of a Police Officer. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 22nd day of July, 2001 and in Lawrence County, Ohio the defendant operated a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop and

35

the defendant's operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property.

"Police Officer" means every officer authorized to direct or regulate traffic, or make arrest for violations of traffic violations.

"Motor Vehicle" means any vehicle that is propelled or drawn by power other than muscular power or power collected from overhead electric trolley lines.

A person acts willfully when it is their specific intention to cause a certain result. It must be established in this case at the time in question there was present in the mind of the defendant a specific intention to elude or flee.

Cause is a central element of this offense. Cause is an act or failure to act which in the natural and continuous sequence directly produces a physical harm to persons or property and without which it would not have occurred.

The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act or failure to act.

Risk of serious physical harm to a person means any of the following: Any risk of physical harm that carries a substantial risk of death, any risk of physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity. Any risk of physical harm that involves some permanent disfigurement or that involves some temporary serious disfigurement. Any risk of physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

Risk of serious physical harm to property means any risk of physical harm to property that does either of the following: Results in the risk of substantial loss to the value of the property or requires a risk of substantial amount of time, effort or money to repair or replace. Any risk that temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

36

> ... Substantial risk means a strong possibility as contrasted with a remote or significant probability that a certain result may occur or that certain circumstance may exist.
>
> If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of Failure to Comply with the Order or Signal of a Police Officer, your verdict must be guilty.
>
> If you find the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Failure to Comply with the Order or Signal of a Police Officer, then your verdict must be not guilty.

*Transcript*, at 168-69. In view of all of the foregoing, petitioner has failed to establish the ineffective assistance of counsel due to his attorney's failure to raise an issue of improper jury instructions on direct appeal.

In sum, petitioner has failed to establish cause or prejudice for the procedural default of any of this claims.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case. Petitioner has waived his right to present claims two, three, and claim four (A) and (D) for federal habeas corpus review.

## IV. CLAIM FOUR - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In claim four, petitioner also asserts that he was denied the effective assistance of appellate counsel because he was represented by the same attorney at trial and on direct appeal and his attorney therefore functioned under a conflict of interest. Petitioner also asserts that he was denied

the effective assistance of appellate counsel because his attorney failed to address an incorrect journal entry that subjected petitioner to bad time and post release control.[11]

The state appellate court rejected petitioner's allegations of ineffective assistance of appellate counsel as follows:

> To justify reopening this appeal, Walker "bears the burden of establishing that there [is] a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d 24, 25 1998-Ohio-704, 701 N.E.2d 696; *see State v. Murnahan, supra*. To do so, Walker must satisfy the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. *See State v. Spivey, supra; State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.
>
> The *Strickland* test requires an appellant to: 1) prove that his counsel was "deficient for failing to raise the issues he now presents"; and 2) demonstrate that there was a "reasonable probability of success had he presented those claims on appeal." *State v. Sheppard*, 91 Ohio St.3d 329, 330, 2001 -Ohio-52, 744 N.E.2d 770, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Moreover, if appellant establishes that the performance or conduct of his appellate counsel was deficient, appellant must then demonstrate that his appeal was prejudiced by counsel's deficient performance. To show prejudice, appellant must show that counsel's deficient performance denied appellant of an appeal "whose result [was] reliable." *Strickland v. Washington*, 466 U.S. at 687. We must review the merits of the omitted or inadequately presented claim when determining whether the appeal was reliable. *See State v. Reed, supra,* citing *Cross v. United States* (C.A. 11, 1990), 893 F.2d 1287, 1290. If the omitted or inadequately presented claim "would have reasonable probability of success on appeal, then *** it is necessary to find 'appellate counsel's [deficient] performance prejudicial because it affected the outcome of the appeal." *Heath v. Jones* (C.A. 11, 1991), 941 F.2d 1126, 1132, quoting *Cross v. United States*, 893 F.2d at 1290.

---

[11]  The remainder of petitioner's claims of ineffective assistance of appellate counsel are discussed *supra* and will not again be considered here.

Initially, it is necessary to point out that Walker's appellate counsel also represented Walker at trial.  As such, his counsel could not realistically be expected to argue on appeal his own ineffectiveness at trial.  *See State v. Lambrecht* (1989), 58 Ohio App.3d 86, 568 N.E.2d 743; *State v. Tinch* (1992), 84 Ohio App.3d 111, 126, 616 N.E.2d 529; *State v. Fuller, supra*.  Thus, Walker's attorney on appeal was not ineffective for failing to argue his own deficiencies at trial.  *See State v. Lambrecht* and *State v. Fuller, supra*.  Furthermore, "the presence of the same counsel at trial and on appeal provides a sufficient basis for denying an application for reopening."  *State v. Mitchell* (Apr. 3, 1997), 8th Dist. No. 70821, reopening disallowed (Feb. 24, 1998), Motion No. 84988; *State v. Fuller, supra; State v. Cruz* (Sept. 25, 2001), 8th Dist. No. 78475, reopening disallowed, 2002-Ohio-3238, Motion No. 34162.

Walker's assertion that an actual conflict exists due to the fact that his appellate counsel could not argue his own ineffectiveness on appeal is without merit.  "'In order to establish a violation of the Sixth Amendment, a defendant *** must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'  A possible conflict is insufficient."  (Citations omitted and emphasis deleted.)  *State v. Getsy*, 84 Ohio St.3d 180, 187, 1998-Ohio-533, 702 N.E.2d 866.  This same analysis has been held to apply to *Murnahan* claims.  *See State v. Hooks*, 92 Ohio St.3d 83, 84, 2001-Ohio-150, 748 N.E.2d 528.  As we shall discuss, Walker has failed to demonstrate that his allegations of ineffectiveness of appellate counsel have any merit.

We further note that "the proper avenue for bringing an ineffective assistance of counsel claim when the defendant has the same counsel at both the trial court and appellate level is a petition for post conviction relief."  *State v. Tinch*, 84 Ohio App.3d at 126.  Furthermore, "a claim of ineffective assistance of counsel cannot be barred by the doctrine of *res judicata* where the claim is raised, for the first time, in a post conviction relief petition and the petitioner was represented by the same counsel both at trial and on appeal."  *State v. Pierce* (1998), 127 Ohio App.3d 578, 585, 713 N.E.2d 498, citing *State v. Lentz* (1994), 70 Ohio St.3d 527, 529-530, 639 N.E.2d 784.  Accordingly, while we cannot reopen Walker's appeal based on ineffective assistance of appellate counsel for failing to argue ineffective assistance of trial counsel, appellant has other possible avenues of relief, namely a petition for post conviction relief, provided the time limits have not expired.  *Id.*

39

Therefore, because counsel was not required to argue his own trial deficiencies on appeal we overrule Walker's Second and Fourth Assignments of Error to the extent that they pertain to the ineffectiveness of appellate counsel in failing to raise alleged deficiencies of his own trial performance.

***

... Walker claims that his appellate counsel was ineffective for failing to argue on appeal that Walker's absence from the pretrial meeting at which the amendment to the indictment was discussed prejudiced him. Walker argues that the meeting was a critical stage of the trial, and that because he had no knowledge of the meeting or amendment he was denied due process. We disagree.

Crim. R. 43(A) provides:

"The defendant shall be present at the arraignment and every stage of trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules."

The United States and Ohio Constitutions contain similar provisions that guarantee a defendant's right to be present at critical stages of the trial. *See State v. Callahan* (Mar. 22, 2000), 7th Dist. No. 97CA224. However, this right is not absolute. *See id., citing State v. Meade*, 80 Ohio St.3d 419, 421, 1997-Ohio-332, 687 N.E.2d 278. Walker asserts that the pretrial meeting, at which the discussions about amending the indictment took place, was a "critical stage" in the trial. However, the plain import of the term "pretrial" suggests that a pretrial conference was not a part of the trial at all. Rather, such a conference takes place before the trial commences. "A jury trial commences after the jury is impaneled and sworn in the presence of the defendant." *State v. Meade, supra*. Thus, a pretrial meeting between defense counsel and prosecutors is not part of the trial at which the defendant has a right to be present. Moreover, defense counsel was present at the meeting and did not object to the amendment of the indictment. The presence of Walker's counsel demonstrates that Walker's rights would not only be represented, but also safeguarded, at the pretrial meeting. *See State v. Callahan, supra*. Furthermore, the indictment was not amended until the start of the trial when the prosecution moved the court to amend the indictment; the record shows that Walker was present at that time.

40

***

... Walker alleges that his appellate counsel was ineffective because he failed to raise on appeal the issue concerning the discrepancies between the journal entry and sentencing transcript.  Walker argues that the journal entry subjects Walker to bad time and post-release control while the sentencing transcript does not reflect that Walker was given notice of these possible sanctions at his sentencing hearing.  Furthermore, Walker argues that bad time has been held to be unconstitutional and, therefore, the court may not subject him to it.  Thus, Walker argues, the fact that his appellate counsel failed to raise two "dead bang winners" on appeal illustrates that his counsel was ineffective.  We disagree.

1.  Post Release Control

A review of the sentencing transcript shows that the trial court failed to inform Walker that he would be subject to post-release control, pursuant to R.C. 2967.28(B).  However, in its sentencing entry, the court stated that Walker could be subject to post-release control by the parole authorities.  In support that this was error, Walker cites to *Woods v. Telb*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103, paragraph two of the syllabus.  There, the Supreme Court of Ohio held that "Pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence."

R.C. 2967.28(B) states, in relevant part:

"Each sentence to a prison term *** for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment.  Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:

"***

"(3) For a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened physical harm to a person, three years."

41

This statute makes it mandatory for offenders convicted of third-degree felonies during the commission of which the offender "caused or threatened to cause physical harm to person[s]." In this context, "the [Adult Parole Authority] exercises no discretion over whether an offender is subject to the sanctions; rather, the statute mandates its imposition." *State v. Johnson*, 8th Dist. No. 80459, 2002-Ohio-4581, at ¶19. However, Walker was convicted of Failing to Comply with an Order or Signal of a Police Officer, a third-degree felony because his act caused "substantial risk" of physical harm to persons or property. Thus, Walker's act does not qualify as an offense under R.C. 2967.28(B). There is a difference between acts that "cause or threaten to cause physical harm to a person" and one that poses a "substantial risk" of physical harm to persons or property. Therefore, we find that Walker was not sentenced to an offense that requires post-release control pursuant to R.C. 2967.28(B). Furthermore, the judgment entry does not sentence Walker to post-release control, but merely states that Walker could be subject to post-release control pursuant to R.C. 2967.28(B). Thus, the trial court did not err by failing to inform Walker that he would be subjected to post-release control as required by Woods. *A fortiori*, Walker's counsel was not deficient for failing to raise this issue on appeal.

Moreover, it is well settled that appellate counsel has no constitutional duty to raise every nonfrivolous issue. *See Jones v. Barnes* (1983), 463 U.S. 745, 751, 103 S.Ct. 3308. Rather, appellate counsel can make a reasoned tactical judgment not to raise issues that lack substantial merit. Therefore, we will not second-guess appellate counsel's decision to raise or not raise every possible assignment of error on appeal.

2. Bad Time.

As to the issue of bad time, the Supreme Court of Ohio has held that R.C. 2967.11 violated the doctrine of separation of powers and was therefore unconstitutional. *See State ex rel. Bray v. Russell* (2000), 89 Ohio St.3d 132, 136, 729 N.E.2d 359. While the trial court did mention in its judgment entry that "[Walker] could be subject to imposition of bad time by prison authorities", we cannot find that Walker's appellate counsel was deficient for failing to raise this issue on appeal. It is apparent to us that Walker was not sentenced to bad time, nor has bad time been imposed on him. We also find that it is impossible for bad time to be imposed on him because the statute conferring the power of imposing bad time on the prison authorities was held unconstitutional. The judgment entry, as it pertains to bad

42

> time, simply has no effect.  Thus, we find that Walker has not proved
> that his appellate counsel was deficient for failing to raise this "non-
> issue" on appeal.  Consequently, Walker has not satisfied the first
> prong of *Strickland* as the incorrect judgment entry.  *See Strickland
> v. Washington* and *State v. Sheppard*, *supra*.

Exhibit 20 to *Return of Writ*.  The state appellate court's decision is entitled to a presumption of

correctness, 28 U.S.C. §2254(d), (e), and petitioner has failed to establish that the state appellate

court's decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*,

*supra*.

Petitioner does not dispute the state appellate court's factual findings.  Because petitioner

was not sentenced to post release control or bad time, he cannot establish the ineffective assistance

of counsel for failing to raise such issues on appeal.

Petitioner also asserts that he was denied the effective assistance of appellate counsel

because he was represented by the same attorney at trial and on direct appeal, and his attorney

therefore functioned under a conflict of interest, because he could not raise issues of ineffective

assistance of trial counsel.  The state appellate court advised petitioner that, because he was

represented by the same attorney at trial and on direct appeal, he must raise this claim in a petition

for post conviction relief pursuant to O.R.C. §2953.21.  *See* Exhibit 20 to *Return of Writ; State v.

Lentz, supra*, 70 Ohio St.3d 529-30, citing *State v. Cole*, 2 Ohio St.3d 112, 114 (1982).  Nonetheless,

petitioner failed to pursue a post conviction action in the state courts.[12]  Petitioner therefore has

failed to fairly present such claim to the state courts.  *See Sampson v. Love*, 782 F.2d 53, 55 (6th Cir.

---

[12]  This is so despite the Magistrate Judge's *Report and Recommendation* recommending
that proceedings be stayed pending his exhaustion of state court remedies.  *See* Doc. No. 9.
Petitioner objected to the stay of proceedings and, pursuant to his request, the claim of
ineffective assistance of trial counsel was deleted from the habeas corpus petition.  *See* Doc. No.
11.

1986).  As previously indicated, fair presentation of a constitutional claim requires the petitioner to raise the claim in a manner and forum that affords the state courts sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The Sixth Circuit has strictly followed the requirement that petitioner fairly present his federal constitutional claims to the state courts as a precondition to federal habeas review.  *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989). Petitioner has failed to establish cause or prejudice for his failure to fairly present this claim to the state courts.  Thus, this claim is waived.

Lastly, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise on appeal the issue that petitioner was unconstitutionally denied the right to be present at a pretrial hearing attended by counsel.  Such claim is plainly without merit.  Under the Sixth Amendment's Confrontation Clause, a criminal defendant has the right to be present at trial. *United States v. Burke*, 345 F.3d 416, 425-26 (6th Cir. 2003).  Due process also protects a defendant's right to be present

> 'to the extent that a fair and just hearing would be thwarted by his absence [.]' " *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934)); *see also id.* at 745-46, 107 S.Ct. 2658 (holding that due process guarantees were not violated where a defendant was excluded from a witness competency hearing, and noting that the hearing did not concern the witnesses' substantive testimony); *Gagnon*, 470 U.S. at 526, 105 S.Ct. 1482 ("[W]e have recognized that [the] right [to be present] is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him."); *United States v. Brown*, 571 F.2d 980, 986 (6th Cir.1978) ("The Constitution only grants to the criminal defendant the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings[.]' " (quoting *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975))).

44

*Id*. Petitioner was denied neither his right to confront witnesses nor due process due to his absence

at a pretrial hearing attended by defense counsel where, according to the state appellate court, only

pretrial discussion occurred, and the indictment was amended at a later date. Further, petitioner's

absence did not violate state law. *Se*e Exhibit 20 to *Return of Writ*.

In view of all of the foregoing, petitioner has failed to establish the ineffective assistance of

appellate counsel under the test set forth in *Strickland*. Claim four is therefore without merit.

**V.**

Based upon all of the foregoing, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days

of the date of this report, file and serve on all parties written objections to those specific proposed

findings or recommendations to which objection is made, together with supporting authority for the

objection(s). A judge of this Court shall make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is made. Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence or may recommit this matt er to the

magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation*

will result in a waiver of the right to have the district judge review the *Report and Recommendation*

*de novo*, and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981).

August 2, 2005                              _____*s/Norah McCann King*_____
                                                  Norah McCann King
                                             United States Magistrate Judge